AUTOMOBILE CLUB OF MICHIGAN COMMITTEE FOR LOWER
RATES NOW v SECRETARY OF STATE (ON REMAND)

Docket No. 154812. Submitted August 25, 1992, at Detroit. Decided
August 27, 1992, at 9:00 A.M. Leave to appeal denied, 440 Mich
911, 1209.

The Automobile Club of Michigan Committee for Lower Rates
Now brought an action for mandamus in the Court of Appeals,
seeking to compel the Secretary of State and the Board of State
Canvassers to certify and transmit to the Legislature a petition
for the initiation of legislation amending various provisions of
the Insurance Code governing no-fault automobile insurance.
The Court of Appeals issued an order dismissing the action on
July 23, 1992 (Docket No. 154331). The Supreme Court, in lieu
of granting an emergency application for leave to appeal,
vacated the order of dismissal, directed the defendants to
certify and transmit the petition, and remanded the matter to
the Court of Appeals for consideration of whether the board
lacked the authority to consider issues other than whether
there were sufficient valid signatures to qualify the petition for
certification. 440 Mich 892 (1992). The Supreme Court also
permitted certain other insured motorists and several organiza-
tions to intervene as defendants.

The Court of Appeals *held:*

1. The Board of State Canvassers has the authority to con-
sider questions relating to the form of an initiative petition.

2. An initiative petition must include a title for the proposed
legislation. Where it does, the board may not reject the petition
on the ground that the title or the proposed legislation violates
the state constitution.

3. The initiative petition in this case included a title. Consti-
tutional infirmities alleged by the defendants and the interven-
ing defendants relating to title-object violations, Const 1963, art
4, § 24, and the failure to republish at length certain statutory
provisions in their proposed amended forms, Const 1963, art 4,

REFERENCES
Am Jur 2d, Initiative and Referendum § 23.
See the Index to Annotations under Initiative and Referendum.

§ 25, may not be considered before the initiative is submitted for a vote by the electorate.

4. The identification of the plaintiff as the proponent of the initiative, as stated on the petition, does not violate MCL 168.482; MSA 6.1482 or MCL 168.544d; MSA 6.1544(4). Neither of these provisions of the Election Law expressly prohibits such identification.

ELECTIONS — PETITIONS FOR INITIATION OF LEGISLATION — TITLE.

A petition for the initiation of legislation must have a title for the legislation proposed; the Board of State Canvassers may reject a petition that does not include a title, but it may not reject a petition on the ground that the title or the proposed legislation violates the state constitution; the constitutional validity of the title or the legislation is a matter to be determined by the judiciary only after the initiative is submitted for a vote by the electorate (Const 1963, art 4, § 24).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter H. Ellsworth, Jeffery V. Stuckey,* and *William C. Bertrand, Jr.*), and *Miller, Canfield, Paddock & Stone* (by *Michael J. Hodge* and *Kevin J. Moody*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gary P. Gordon,* Assistant Attorney General, for the defendants.

*Honigman Miller Schwartz & Cohn* (by *John D. Pirich, Timothy Sawyer Knowlton,* and *Sandra L. Jasinski*), for the intervening defendants.

ON REMAND

Before: SAWYER, P.J., and MacKENZIE and NEFF, JJ.

PER CURIAM. Pursuant to the Michigan Supreme Court's July 30, 1992, order of remand, we are called upon to give plenary consideration to "the issues of whether the State Board of Canvassers lacks the authority to consider issues other than

whether there are sufficient valid signatures to qualify the proposal for certification and to consider the intervening defendants' claim that the proposal is invalid because of defects other than the signature requirement." 440 Mich 892 (1992).

Notwithstanding the extensive briefs and appendices, the issues presented are fairly straightforward. The state's largest automobile insurer, AAA Michigan, created the Automobile Club of Michigan Committee for Lower Rates Now, with headquarters at the same location as the insurance company. This committee then retained a professional organization to circulate initiative petitions designed to amend the Insurance Code in a manner that would ostensibly lower automobile insurance rates for the benefit of the motoring public, but which intervening defendants contend would be in a manner solely beneficial to the economic bottom line of automobile insurance companies, principally AAA.

I

The petitions, as circulated, consist of six pages. The last five pages constitute the text of the proposed legislation. On these pages, there is neither a title to the legislation nor any reference to a title.

On the cover page, however, the opening paragraph sets forth what proponents of the initiative contend should be treated as the title:

A Petition for amending certain provisions of the Michigan Insurance Laws, specifically sections 2109, 2111 and 2111a of Chapter 21, commonly known as the Essential Insurance Act, sections 3101, 3104, 3107, 3109a, 3111, 3115, and 3135 of Chapter 31, commonly known as the No-Fault

Insurance Act, section 202 of Chapter 2 and section 3009 of Chapter 30, and for enacting section 3010 of Chapter 30.

What follows is a paragraph purporting to describe the principal features of the legislation proposed to be enacted through the initiative process, which intervening defendants contend is misleading.

Intervening defendants identify two other purported defects. The initiative proposes to make substantial changes to § 2111 of the Insurance Code, but the body of only certain affected subsections, not the entire section as rewritten, is included in the "full text of the proposed legislation" on the pages attached to the initiative petition. As a result, intervening defendants claim that § 2111 is not "republished at length" as required by Const 1963, art 4, § 25.

Intervening defendants also contend that a statement in the petition that it is "paid for by Automobile Club of Michigan Committee for Lower Rates Now" constitutes a prohibited form of extraneous material designed to improperly influence registered voters to sign the petition. Thus, intervening defendants claim that "placement of a partisan political description directly on the petition form violates §§ 482 and 544d [of the Election Law[1]] by incorporating political campaign material on the petition, itself."

II

With regard to the requirement that the initiative petition contain a title, Const 1963, art 2, § 9, unlike its predecessor, Const 1908, art 5, § 1, does not go into detail regarding the form of initiative petitions. Instead, the current constitution, in the

[1] MCL 168.482, 168.544d; MSA 6.1482, 6.1544(4).

last sentence of that section, provides that "[t]he Legislature shall implement the provisions of this section." One limit, however, imposed in the first clause of art 2, § 9, is that the "power of initiative extends only to laws which the Legislature may enact under this constitution."

In that respect, identical language appeared in Const 1908, art 5, § 1. This language formed the basis for the holding in *Leininger v Secretary of State,* 316 Mich 644, 648; 26 NW2d 348 (1947), that an initiative petition lacking a statutory title was fatally defective and could not be submitted to the electorate for approval, by virtue of the provision of Const 1908, art 5, § 21 [now Const 1963, art 4, § 24], that "[n]o law shall embrace more than 1 object, which shall be expressed in its title." The *Leininger* Court held:

> This makes the title an essential part of every law. That this title requirement applies to laws enacted by the initiative, as well as to those enacted by the legislature, there can be no doubt, particularly in view of the provision of section 1 [of art 5], that no law shall be enacted by the initiative that could not, under the Constitution, be enacted by the legislature. . . .
>
> *   *   *
>
> It follows that the petition did not meet the constitutional requirements prerequisite to its transmittal to the legislature. Nor could the legislature, had it been so disposed, have cured the defect in view of the inhibition of section 1 against legislative change or amendment. [*Id.* at 648-649.]

The *Leininger* Court noted that it was carving out a very narrow exception to the general rule of *Hamilton v Secretary of State,* 212 Mich 31; 179 NW 553 (1920), where it was held that substantive constitutional challenges to legislation proposed

through the petition process are premature if pre-sented before apparent adoption of such measures at an appropriate general election. Substantive constitutional questions are to be resolved in conjunction with the usual rules of constitutional adjudication, which require, among other things, concrete facts against which to test the measure and a party with standing to raise the constitutional challenge.

If a proposed initiative contains a title, but it is alleged that the title is defective for one of a variety of reasons, the rule of *Hamilton* supersedes the rule of *Leininger,* and the courts will decline to consider whether the title fails to meet the constitutional requirements, thereby invalidating the legislation, before submission of the proposed legislation to the people. *Beechnau v Secretary of State,* 42 Mich App 328; 201 NW2d 699 (1972).

In *Newsome v Bd of State Canvassers,* 69 Mich App 725, 730-731; 245 NW2d 374 (1976), this Court said:

> It is plaintiffs' position that the petitions failed constitutionally because if they contain a title, it embraces more than one object. On the authority of *Beechnau v Secretary of State,* 42 Mich App 328; 201 NW2d 699 (1972), we decline to pass on this question prior to submission of the proposed legislation of [sic] the people. We note parenthetically that the plaintiffs' reliance upon *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947), is misplaced. The holding there rested upon a specific provision of the Constitution of 1908. The Constitution of 1963 retains no such provision. Furthermore, the petition in *Leininger* contained no title whatsoever. The petition before us is in fact headed by a clear statement of the object of the proposed measure. Moreover, the Supreme Court has specifically disapproved of *Leininger, supra,* see *Kuhn* [*v Dep't of Treasury,* 384 Mich 378; 183 NW2d 796 (1971).]

In holding that *Leininger* is no longer good law, the *Newsome* panel went too far. In *Kuhn v Dep't of Treasury,* 384 Mich 378, 385; 183 NW2d 796 (1971), the Supreme Court said, in relevant part:

> Previous decisions of this Court requiring strict compliance with constitutionally mandated procedures for exercise of the powers of initiative and referendum should not be read as limiting the occasions upon which those powers may be exercised. See *Leininger v Secretary of State* [316 Mich 644; 26 NW2d 348 (1947)]; *Scott v Secretary of State* [202 Mich 629; 168 NW 709 (1918)]; *Thompson v Secretary of State* [192 Mich 512; 159 NW 65 (1916)].[11]

---

[11] The cited cases deal with the detailed procedures set forth in the 1908 Constitution, as amended, for the exercise of the powers of initiative and referendum. Michigan Const 1908, art 5, § 1. The present Constitution largely eliminates such procedural detail. Michigan Const 1963, art 2, § 9. See the Convention Comments following the section.

---

In *Leininger,* the majority did refer to specific language in Const 1908, art 5, § 1, which has no counterpart in the present constitutional initiative provision, namely, "Any initiative or referendum petition may be presented in sections, each section containing a full and correct copy of the title and text of the proposed measure." However, as the earlier quotations from *Leininger* established, that was merely one of two alternative bases for the ultimate holding that a petition with no title is defective.

The alternative and still valid reason put forth in *Leininger* was the limitation in both the Constitutions of 1908 and 1963 that no law may be proposed by initiative that the Legislature may not pass under the constitution, which by reference incorporates the title requirements of Const 1963, art 4, § 24, formerly Const 1908, art 5, § 21.

Four weeks after its decision in *Kuhn,* the Supreme Court again cited *Leininger* with apparent agreement with its basic principles:

> The careful reader of *City of Jackson v Comm'r of Revenue* [316 Mich 694, 716-718; 26 NW2d 569 (1947)], will note that the Court applied to its decision that which was urged upon it in several of the briefs of the many counsel participating, namely, the "election-cures-error" doctrine. On page 716 the Court opened this discussion by saying:
>
> "We are not here deciding a case where there is a fatal defect in the petitions, as a result of which the proposition should be withheld from submission to the voters. Such were the situations in the *Scott* and *Leininger* cases, *supra,* [202 Mich 629, and 316 Mich 644]. Here we have a situation where we find there were no such fatal defects, but we are asked to nullify the act of the voters in adopting an amendment." [*Carman v Secretary of State,* 384 Mich 443, 455; 185 NW2d 1 (1971).]

*Leininger* was again cited as recently as *Frey v Dep't of Management & Budget,* 429 Mich 315, 323; 414 NW2d 873 (1987), in a manner which, even if *Kuhn* vitiated *Leininger,* reaffirms the *Leininger* doctrine: "In *Leininger* . . . we held that the title-object clause appearing in Const 1908, art 5, § 21 (now art 4, § 24) applied to initiated laws."

Therefore, an initiative petition must provide a title for the proposed legislation. We hold that the opening paragraph, previously quoted, is a title.

In *Leininger,* the Court held that the first two sections of the proposed legislation, which constituted a statement of purpose of the legislation without adding substance to the codified laws, could not serve as a substitute for a proper and separate title. The Court noted the longstanding historical practice of the Legislature "in Michigan

to cause the title of an act to precede and the body of the act to follow the enacting clause. Never has it been the practice to incorporate the title in the body of the act." 316 Mich 649. The Court then held that the word "title" as here employed in the Constitution "must be deemed to be consonant with the common usage and well known legislative practices in that respect at the time of the Constitution's adoption." *Id.*

In this case, however, the language at the top of the first page of the petition is separate from the body of the legislation. The doctrine of substantial compliance applies to this situation. *Carman, supra.* The statement that the petition for initiation of legislation is "for amending certain provisions of the Michigan insurance laws, specifically §§ 2109," is equivalent to the sorts of titles that the Legislature regularly provides for amendatory legislation.[2] If that constitutes a "clear statement of the object of the proposed measure" heading the petition, then it suffices as a title. *Newsome, supra.*

The intervening defendants object, however, that the title is misleading and inaccurate. It refers, for example, to "certain provisions of the Michigan Insurance Laws," which intervening defendants claim is a reference to a nonexistent legislative codification. The sections referred to are all part of the "Michigan Insurance Code of 1956." However, once this Court determines that there is a title, whether the title is sufficient or deficient is a question not to be adjudicated before submission of the proposed legislation to the people. *Beechnau, supra.*

Intervenors also object that the title is not on the same pages as the body, and point to the boldface petition language claiming "the full text

[2] E.g., 1991 PA 21.

of the proposed legislation" is on the attached pages. This argument misconstrues "text" as encompassing the title and the body of legislation; however, "text" and "body" are synonymous and distinct from "title." *Webster's Third New International Dictionary* (1965) includes in the definitions of "text":

> 2a: the main body of printed or written matter on a page exclusive of headings, running title, footnotes, illustration, or margins.

### III

The next contention is that the petitions are invalid because of the violation of Const 1963, art 4, § 25 with respect to the proposed amendment of § 2111 of the Insurance Code. Article 4, § 25 provides:

> No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length.

These petitions, with respect to § 2111, republish at length only subsections beginning with 6 to the end of the amended section, and thus, on its face, the petitions arguably violate Const 1963, art 4, § 25 in this respect. Is the issue cognizable at this time rather than only after submission to the electorate?

Intervening defendants seem to assume, without citation of relevant supporting authority, that if the initiative is constitutionally defective in this respect, then it is wholly defective and it cannot be submitted to the electorate. However, it seems apparent that the usual doctrines of constitutional

adjudication apply. If legislation is unconstitutional in part because one of numerous sections otherwise validly enacted violates Const 1963, art 4, § 25, then it is only that section, and not the entire bill, that is unconstitutional. That was the result achieved in this Court's decision in *Berrien Co v Michigan,* 136 Mich App 772, 788-789; 357 NW2d 764 (1984), where this Court found that a portion of an appropriations bill violated the reenactment and publication requirements of art 4, § 25. Accordingly, that portion of the appropriations act was deemed unconstitutional; the entire act was not, however, stricken as unconstitutional.

This result is consistent not only with judicially developed principles of constitutional law, but with legislative codification of those principles as set forth in MCL 8.5; MSA 2.216:

> In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:
> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

Thus, if this initiative legislation had been enacted by the Legislature, this Court might declare that § 2111 is invalid as being in violation of art 4, § 25, thus reinstating the preamendment version of § 2111, the attempted amendment consequently being a nullity. That would not preclude amendment of any other portion of the Insurance Code, by this or other legislation.

Accordingly, this alleged defect does not warrant precluding submission of the initiative to the electorate, just as this Court would not be warranted in enjoining the Legislature from adopting a bill that contained such a defect. The time to consider whether to declare the affected portion invalid is after its adoption.

IV

Lastly, intervening defendants contend that the description of the proponent on the face of the petition as the "Automobile Club of Michigan Committee for Lower Rates Now" somehow violates §§ 482 and 544d of the Election Law. A reading of the two sections fails to reveal any language addressing a question of this kind.

The "tear sheet" part of the initiative petition, that part headed by "LOWER RATES NOW!" in inch-high upper case letters, does not render the petitions invalid as somehow being not in the "form prescribed by the Secretary of State." *Council About Parochiaid v Secretary of State*, 403 Mich 396; 270 NW2d 1 (1978). The identification of the proponents of initiative legislation is not specifically prohibited by §§ 482 and 544d.

V

Accordingly, we conclude that, while the Board of State Canvassers possesses the authority to consider questions of form, and thus "issues other than whether there are sufficient valid signatures to qualify the proposal for certification," the intervenors' claim that the proposal is invalid because of defects other than the signature requirement is either premature or without substantive merit. We note, however, that what we decide is

only that the petition is facially adequate in form to be submitted to the electorate. We express no opinion about the constitutional sufficiency of the title, the question of compliance with Const 1963, art 4, § 25, or the wisdom of the proposal.

It should be noted that the Attorney General, although disavowing any position on intervening defendants' substantive challenges, asks this Court to consider whether the statutory timetable should be judicially revised to assure that this initiative proposal can be submitted at the November 1992 general election. We decline to do so because it is not within the purview of the Supreme Court's order of remand.